UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| AIRWAIR INTERNATIONAL LTD., a company of the United Kingdom,<br><br>Plaintiff,<br>v.<br><br>MATTHEW K. SCHULTZ, an individual doing business as CALCEUS, a fictitious business name; NPS (SHOES) LTD., a British Limited Company; and DOES 1-50,<br><br>Defendants. | Case No.: 5:13-CV-01190-LHK<br><br>ORDER DENYING MOTION TO DISMISS |

Plaintiff AirWair International Ltd. ("AirWair"), brings this action against defendant NPS (Shoes) Ltd. ("NPS") and defendant Matthew K. Schultz, an individual doing business as Calceus ("Calceus"), for federal trademark infringement, federal false designation of origin, trademark dilution, California statutory unfair competition, common law unfair competition, and California statutory trademark dilution. ECF No. 28 ("First Am. Compl."). Before the Court is NPS's motion to dismiss for lack of personal jurisdiction. ECF No. 30 ("Mot.").

Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument and hereby VACATES the hearing scheduled for November 13, 2014. The

1

Case No.: 5:13-CV-01190-LHK
ORDER DENYING MOTION TO DISMISS

case management conference set for November 13, 2014 at 1:30 p.m. remains as set. Having considered the submissions of the parties and the relevant law, and for good cause shown, the Court hereby DENIES NPS's motion to dismiss.

## I. BACKGROUND

### A. Factual Background

The following background is drawn from AirWair's operative complaint, as well as declarations submitted in conjunction with NPS's motion to dismiss.

AirWair, a company based in the village of Wollaston, England, designs, manufactures, markets, and sells footwear under the Dr. Martens trademark. First Am. Compl. ¶¶ 1, 11. AirWair holds several registrations with the U.S. Patent and Trademark Office for the trade dress of Dr. Martens footwear, including "the combination of yellow stitching and a two-tone grooved sole edge"; yellow "welt stitch located around the perimeter of footwear"; longitudinal ribbing and a dark color band over a light color in the sole edge; and "longitudinal ribbing and a dark color band over a light color on the outer sole edge, welt stitching, and a tab at the top back heel of footwear." *Id*. ¶ 14 (internal quotation marks omitted). According to AirWair, these trademarks have been in use for 50 years, and have been used in the United States since 1984. *Id*.

NPS, a British Limited Company also located in Wollaston, England, manufactures, advertises, distributes, and sells Solovair footwear. *Id.* ¶ 3. AirWair has alleged that several of NPS's Solovair products are sold in the United States, including California, and has further alleged NPS's products infringe the trade dress of AirWair's Dr. Martens footwear. *Id.* ¶¶ 6, 18-25, 51.

At issue in the instant motion is the degree of contact NPS has with the state of California. According to NPS, the company is not licensed or registered to do business in California; has no property or subsidiaries here; and has no office, employees or registered agents, phone or mailing address in-state. Declaration of Christian Castle in Support of NPS' Motion to Dismiss, ECF No. 30-1, ("Castle Decl."), ¶¶ 5-13. NPS has further alleged that it does not individually direct advertisements or knowingly target marketing emails to consumers in California. *Id.* ¶ 10, 16.

Co-defendant Matthew K. Schultz is the owner and principal of Calceus, LLC, a California limited liability company based in Poway, California. First Am. Compl. ¶ 4. According to

AirWair's First Amended Complaint, sometime on or before 2012 Calceus negotiated with NPS to be NPS's official and exclusive authorized importer, distributor and reseller of Solovair footwear in the United States. *Id.* ¶¶ 5, 27, 28. Pursuant to the agreement between the two businesses, NPS licensed to Calceus Solovair-related intellectual property owned by NPS. *Id*. ¶ 29. Thereafter, NPS sold over 500 units of infringing footwear to Calceus between January 2012 to January 2013. *Id*. at ¶ 41. The infringing footwear was allegedly delivered in six shipments that journeyed from NPS's factory in England to Calceus in California. *Id*. Calceus then resold the Solovair footwear to consumers and retailers throughout California, as well as the rest of the United States, between January 2012 and April 2013. *Id*. Calceus shipped returns from its U.S. sales back to NPS in England. *Id*. ¶ 26. According to AirWair, Calceus operated as "a central location to store Solovair footwear intended for the U.S. market," and "significant payments flow between Calceus and NPS" based on shipments from NPS to Calceus. *Id*. at ¶¶ 26, 43.

   According to AirWair, Calceus operates a commercial, interactive website, www.solovairdirect.com ("Solovair Direct") for the advertising, promotion, and sale of Solovair footwear. First Am. Compl. ¶ 31. NPS has worked closely with Calceus in the design of Solovair Direct by, among other things, sharing images of Solovair footwear and historical images of NPS's factory and workers, both for use on Solovair Direct. *Id*. ¶ 31-32. NPS also allegedly directed Calceus to make Solovair Direct as similar as possible to NPS's own website, www.solovair.co.uk. *Id*. For example, Calceus's website contains an "About Us" page that is entitled "History of Solovair and NPS." *Id*. ¶ 33. The page is allegedly very similar to the "About Us" webpage from NPS's own websites. *Id*. NPS also allegedly directed Calceus to add the language, "We are the official Solovair representative for Canada as well as the US" to Calceus's website. *Id*. ¶ 34. Calceus' Facebook page similarly contains NPS's Solovair logo, as well as the blurbs "Official US Partner" and "Exclusive North American Retailer for Solovair Boots, Shoes and Accessories." *Id*. ¶ 37. NPS's own website, www.solovair.co.uk, has a "Where To Buy" webpage that directs U.S. consumers to, among other retailers, the Calceus website. *Id*. ¶ 37-38.

   AirWair has alleged that NPS and Calceus have "continuously re-negotiated, added and/or removed terms to, and renewed [their] Agreement as necessitated by business operations in the

United States." *Id*. ¶ 29. AirWair has also alleged that NPS provided ongoing support and oversight to Calceus regarding Calceus's website, Solovair Direct. *Id*. ¶ 40. NPS's alleged support included: (1) coordination of orders, import/export controls, invoices, customs, and tariffs; (2) selection of styles, sizes, quantities, pricing, and packaging for the U.S. market; (3) support regarding the sales performance of Solovair Direct; (4) the provision of promotional materials to Calceus for events in California and elsewhere in the United States; (5) the supply of product images for use in advertising and marketing; (6) assistance with U.S. trade shows; (7) strategy for new promotional opportunities in California and elsewhere in the United States; and (8) assistance in responding to customer complaints and return requests. *Id.*

Finally, AirWair has alleged that NPS, or Calceus operating at NPS's behest, established relationships with retailers in San Francisco and Berkeley, California, as well as Lancaster, Pennsylvania to sell Solovair footwear. *Id*. ¶ 45. Calceus has continued to seek out additional retailers to sell Solovair footwear in the United States, also at NPS's alleged behest. *Id*. ¶ 46.

### B. Procedural History

On March 3, 2013, AirWair filed a complaint against NPS and defendant Matthew K. Schultz. ECF No. 1. On April 10, 2014, since AirWair had not yet served the defendants, the Court ordered service, ECF No. 9, and AirWair shortly thereafter obtained a waiver of service from each defendant, ECF Nos. 13 & 16. On July 7, 2014, The Court approved a consent judgment between Plaintiff and defendant Matthew K. Schultz/Calceus. ECF No. 20.

On July 18, 2014, NPS filed its first motion to dismiss for lack of personal jurisdiction. ECF No. 23. In response, on July 29, 2014, Plaintiff filed a First Amended Complaint naming NPS, Matthew K. Schultz, and Calceus LLC as defendants. ECF No. 28. In its First Amended Complaint, AirWair alleged trademark infringement, federal unfair competition, trademark dilution, unfair competition under California Business & Professions Code §§ 17200, *et seq.*, common law unfair competition, and trademark dilution under California Business & Professions Code §§ 14330, *et seq*. First Am. Compl. ¶¶ 49-74. AirWair also alleged that NPS's promotion, advertising, offering for sale, and sale of Solovair footwear is likely to cause and has caused confusion between AirWair's footwear and NPS's footwear. *Id*. ¶ 47. AirWair further alleged that

4

1  NPS's activity has caused and continues to cause damage to Plaintiff in California in the form of

2  lost sales and profits, and damage to its reputation and goodwill in California. FAC ¶ 48. AirWair

3  requested injunctive relief and monetary damages. *Id*. at 14-15.

4      On August 20, 2014, the Court approved an amended consent judgment between Plaintiff

5  and defendants Matthew K. Schultz and Calceus, LLC. ECF No. 32.

6      On August 12, 2014, responding to the First Amended Complaint, NPS filed the instant

7  motion to dismiss for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure

8  12(b)(2). ECF No. 30. On August 26, 2014, AirWair filed its opposition to the motion. ECF. No.

9  33. On September 2, 2014, NPS filed a reply in support of its motion. ECF No. 34.

## II.  LEGAL STANDARD

When a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand a motion to dismiss for lack of personal jurisdiction. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (citing *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010)). At this stage of the proceeding, "uncontroverted allegations in plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in plaintiff's favor." *Brayton Purcell*, 606 F.3d at 1127 (internal quotation marks, citations, and alterations omitted). In addition, "[t]he court may consider evidence presented in affidavits to assist it in its determination and may order discovery on the jurisdictional issues." *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001).

When there is no applicable federal statute governing personal jurisdiction, as is the case here, the law of the forum state determines personal jurisdiction. *Schwarzenegger*, 374 F.3d at 800. California's long arm statute, which determines personal jurisdiction, is coextensive with federal due process requirements, and therefore the analysis for personal jurisdiction is the same under both state and federal law. *Id.* at 800-01; Cal.Code Civ. Pro. § 410.10. A court may exercise

personal jurisdiction over a non-resident defendant only when the defendant has "'minimum contacts'" with the forum state such that jurisdiction "'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger*, 374 F.3d at 801 (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)). This "minimum contacts" requirement can be satisfied either by establishing general jurisdiction or specific jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). Only specific jurisdiction is at issue here. Opp'n at 5.

For specific personal jurisdiction, the Ninth Circuit has adopted a three-part test that requires the plaintiff to show: (1) the defendant purposefully directed its activities at residents of the forum or purposefully availed itself of the privilege of doing business in the forum; (2) that the plaintiff's claim arises out of or relates to those activities; and (3) that the assertion of personal jurisdiction is reasonable and fair. *Schwarzenegger*, 374 F.3d at 802. It is the plaintiff's burden to plead allegations satisfying the first two prongs. *Id.* If the plaintiff does so, the burden then shifts to the defendant to show why the exercise of personal jurisdiction would not be reasonable and fair. *Id.* "So long as it creates a substantial connection with the forum, even a single act can support jurisdiction," but those acts must not "create only an attenuated affiliation with the forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 n.18 (1985) (internal quotation marks omitted).

### III.   DISCUSSION

NPS has argued that there is no specific personal jurisdiction here because NPS did not purposefully direct activity at California. Mot. at 15-17. NPS has further asserted that AirWair's claims do not arise out of NPS's forum-related activities. Mot. at 18. Finally, NPS has contended that personal jurisdiction would be unreasonable. Mot. at 18-20. The Court addresses each of NPS's arguments in turn.

#### A. Purposeful Availment or Purposeful Direction

The first prong of the Ninth Circuit's three-part test for personal jurisdiction requires that the defendant either purposefully directed its activities at residents of the forum or purposefully availed itself of the privilege of doing business in the forum. For trademark infringement actions,

6

the Ninth Circuit requires a showing of purposeful direction. *Nissan Motor Co. v. Nissan Computer Corp.*, 246 F.3d 675 (9th Cir. 2000). To establish purposeful direction, a plaintiff must in turn satisfy a three-part test drawn from the Supreme Court's opinion in *Calder v. Jones*: (1) the defendant must have committed an intentional act; (2) the defendant's act was expressly aimed at the forum state; and (3) the defendant knew the brunt of the harm was likely to be suffered in the forum state. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) (citing *Calder v. Jones*, 465 U.S. 783 (1984).

### 1. Intentional Act

In the context of the *Calder* test, an intentional act is "an external manifestation of the actor's intent to perform an actual, physical act in the real world." *Washington Shoe Co. v. A-Z Sporting Goods, Inc.*, 704 F.3d 668, 674 (9th Cir. 2012); *Schwarzenegger*, 374 F.3d at 806 (an intentional act "refers to an intent to perform an actual, physical act in the real world."). The threshold of what constitutes an intentional act is relatively low. Indeed, under Ninth Circuit law, an "intentional act" includes engaging in sales transactions outside the forum state, *CE Distribution, LLC v. New Sensor Corp.*, 380 F.3d 1107, 1111 (9th Cir. 2004); advertising a product outside the forum, *Schwarzenegger*, 374 F.3d at 806; or selling an allegedly infringing product outside the forum, *Washington Shoe Co.*, 704 F.3d at 674.

Here, AirWair has identified several of NPS's acts that meet the definition of an intentional act. *See* Opp'n at 6. According to AirWair, NPS intentionally entered into a written exclusivity agreement with Calceus that made Calceus NPS's official distributor in California. First Am. Compl. ¶¶ 27-28. NPS subseqently sold and shipped products to Calceus in California between January 2012 and January 2013. *Id.* ¶ 41. NPS then assisted Calceus in the marketing of allegedly infringing Solovair footwear, including assisting Calceus with design of Calceus's Solovair Direct website. *Id.* ¶ 32. NPS clearly evinced an intent to perform "an actual, physical act in the real world." *Schwarzenegger*, 374 F.3d at 806. In fact, district courts in the Ninth Circuit have found similar acts to satisfy the intentional act requirement. *See Chanel Inc. v. Yang*, No. C 12-4428 PJH, 2013 WL 5755217, at *7 (N.D. Cal. Oct. 21, 2013) (finding an intentional act for advertising and offering for sale allegedly infringing products on a website); *Herman Miller Inc. v. Alphaville*

*Design Inc.*, No. C 08-03437 WHA, 2009 WL 3429739, at *3 (N.D. Cal. Oct. 22, 2009) (finding an intentional act where trademark infringing products were delivered to a reseller in California with the intent to have those products sold in California). Therefore, the first prong of the *Calder* test is satisfied.

### 2. Express Aiming

The second prong of the purposeful direction inquiry is whether the defendant expressly aimed its act at the forum state. *Dole Food Co*, 303 F.3d at 1111. The "express aiming" analysis "depends, to a significant degree, on the specific type of tort or other wrongful conduct at issue." *Schwarzenegger*, 374 F.3d at 807. In addition, to be satisfied, the "express aiming" inquiry requires "something more" than "a foreign act with foreseeable effects in the forum state." *Washington Shoe Co.*, 704 F.3d at 675 (citing *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000)). For instance, the delivery or consumption of products in the forum state that are "random," "fortuitous," or "attenuated" do not satisfy the express aiming analysis. *Mavrix Photo*, 647 F.3d at 1230 (citing *Burger King*, 471 U.S. 462, 486 (1985)). On the other hand, "where a defendant *knows*—as opposed to being able to foresee—that an intentional act will impact another state," then "the 'expressly aimed' requirement is satisfied." *Washington Shoe Co.*, 704 F.3d at 677 (emphasis in original); *see also Schwarzenegger*, 374 F.3d at 803 (holding that purposeful direction "usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere"). Put another way, where the forum state is the "focal point both of the [conduct] and of the harm suffered," jurisdiction is proper. *Calder*, 465 U.S. at 789; *DFSB Kolective Co., Ltd. v. Tran*, No. 11-CV-01049-LHK, 2011 WL 6730678, at *3 (conduct of foreign defendant was expressly aimed at California where, *inter alia*, defendant "used several California companies to further his scheme of perpetuating" violations of plaintiff's copyright).

As an illustrative example, the Ninth Circuit's recent opinion in *Mavrix* involved two parties who were both out-of-state corporations: plaintiff was a photo agency headquartered in

Miami, Florida, and defendant was a celebrity gossip website based in Toledo, Ohio.[1] *Mavrix Photo*, 647 F.3d at 1221-22. Plaintiff sued defendant in California, alleging that the defendant had posted one of plaintiff's copyrighted photos on defendant's website. *Id.* at 1221. The question before the Ninth Circuit was whether the defendant was subject to personal jurisdiction in California, even though neither party was headquartered in California. *Id.* at 1221-2. Regarding the "expressly aimed" requirement, the Ninth Circuit found that the "most salient . . . fact [was] that Brand [the defendant] used Mavrix's copyrighted photos as part of its exploitation of the California market for its own commercial gain." *Id.* at 1229. As evidence that the defendant sought to exploit the California market, the *Mavrix* court pointed out that the defendant targeted advertisements to California residents, and that a California viewer base was an "integral component of [defendant]'s business model and its profitability." *Id.* at 1230. Based on this evidence, the Ninth Circuit held that where a defendant "knows—either actually or constructively—about its California user base, and . . . it exploits that base for commercial gain," that defendant expressly aims its conduct at California. *Id.* at 1230. Put another way, where a party "continuously and deliberately exploited" the market of the forum state, that evinces conduct expressly aimed at the forum. *Id.*; *see also Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1983) (out-of-state magazine subject to personal jurisdiction where magazine was "carrying on a part of its general business in" forum state, and "continuously and deliberately exploited" the forum state's market).

Here, AirWair has alleged that NPS signed Calceus to an exclusive distribution agreement, with the goal of selling NPS's product in the California market. Specifically, AirWair claimed that NPS selected Calceus "to act as its official authorized importer, distributor, and reseller" of NPS's footwear with the goal of "serv[ing] the entire North American market, including California." First Am. Compl. ¶ 27. AirWair has also alleged that NPS shipped approximately 500 products to Calceus in California, in six separate shipments, for sale and distribution to customers in California, as well as other locations. *Id.* ¶ 41. AirWair further contended that Calceus did in fact

---

[1] Plaintiff also had a Los Angeles, California office, but the Ninth Circuit did not consider this to be relevant in its decision as to whether the defendant had expressly aimed its conduct at California. *See Mavrix*, 647 F.3d at 1229-30.

9

Case No.: 5:13-CV-01190-LHK
ORDER DENYING MOTION TO DISMISS

1    sell infringing footwear in California, including in this district. *Id.* ¶ 42 (citing Exhibit 13 to First
2    Amended Complaint).  NPS also stands accused of closely coordinating the sale, marketing, and
3    distribution of infringing footwear with Calceus in California and elsewhere. *See id.* ¶¶ 40-45.
4    According to AirWair, NPS also signed the distribution agreement with Calceus to use "Calceaus's
5    place of business in Poway, California as a central location to store Solovair footwear intended for
6    the U.S. market . . . including California." *Id.* ¶ 43.  AirWair also alleged that NPS, or Calceus
7    acting at NPS's behest, established relationships with other retailers of footwear in, among other
8    places, San Francisco and Berkeley, California. *Id.* ¶ 45.  Finally, AirWair has alleged that while
9    NPS was establishing these contacts with Calceus, NPS contemplated that it might inflict harm on
10   AirWair's trademark and discussed this fact with Calceus.  *See id.* ¶ 30.  Indeed, AirWair maintains
11   brick-and-mortar stores in San Francisco and Los Angeles, *id.* ¶ 21, which makes it more likely
12   that the sale of NPS's infringing footwear would harm AirWair in the California market.
13            Taking the uncontroverted allegations in AirWair's complaint as true, NPS "continuously
14   and deliberately exploited" the California market, such that NPS "must reasonably anticipate being
15   haled into court" here.  *Hustler*, 465 U.S. at 781.  AirWair has sufficiently pled, based on specific
16   allegations, that NPS knew "actually or constructively" about its California customer base, and that
17   NPS used AirWair's protected trade dress "as part of its exploitation of the California market for its
18   own commercial gain." *Mavrix Photo*, 647 F.3d at 1229.  Such conduct satisfies the "expressly
19   aimed" requirement. *Id.*; *see also Plant Food Co-op v. Wolfkill Feed & Fertilizer Corp.*, 633 F.2d
20   155, 159 (9th Cir. 1980) (where "the sale of a product of a distributor is not an isolated occurrence,
21   but arises from the efforts of the distributor to serve, *directly or indirectly*, the market for its
22   products in other states, it is not unreasonable to subject it to suit in one of those states.") (emphasis
23   added); *Monje v. Spin Master Inc.*, No. CV-09-1713, 2013 WL 2369888, at *9 (D. Ariz. May 29,
24   2013) (holding that a defendant "cannot plan to have its product shipped into all of the United
25   States, work closely with another entity to execute that plan, and then object when a federal court
26   located in one of those states attempts to exercise personal jurisdiction over it."). Moreover,
27   AirWair has pled that NPS and Calceus "discussed the fact that they were introducing footwear in
28   the United States that included AirWair's Trade Dress Marks, contemplating that it may draw legal

attention from AirWair." First Am. Compl. ¶ 30.  This indicates that NPS "*knows*—as opposed to being able to foresee—that an intentional act will impact" AirWair in California, in which case "the 'expressly aimed' requirement is satisfied." *Washington Shoe Co.*, 704 F.3d at 675 (emphasis in original).

      NPS has argued that the "'express aiming' requirement is met when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." Reply at 3.  NPS appears to imply that because AirWair is not a resident of California, it is impossible for NPS to have expressly aimed its conduct at California.  It is true that the Ninth Circuit has held that the expressly aimed requirement is met "when the defendant is engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be resident of the forum state." *Dole Food Co.*, 303 F.3d at 1111 (internal quotation marks omitted).  However, while the fact that the plaintiff is a resident of the forum state may be *sufficient* for purposes of specific personal jurisdiction, it is not a *necessary* one. *See, e.g.*, *Mavrix Photo*, 647 F.3d at 1221-22; *Hustler*, 465 U.S. at 781 (New Hampshire court had personal jurisdiction over New York plaintiff and Ohio-based defendant where defendant "has continuously and deliberately exploited the New Hampshire market"); *see also Herman Miller Inc. v. Alphaville Design Inc.*, No. C 08-03437, 2009 WL 3429739, at *3 (N.D. Cal. Oct. 22, 2009) (foreign defendant's delivery of counterfeit chairs to a company in California for the intended resale of the counterfeited chairs in California satisfied the express aiming requirement, even though plaintiff was an out-of-state corporation).

      In addition, NPS has argued that substantial sales by a foreign company to a local distributor is not enough for personal jurisdiction.  In support, NPS has cited three cases from the 1950s, all of which pre-date the Ninth Circuit's first enunciation of the "expressly aimed" requirement by over four decades. *See Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000).  Moreover, none of these three cases are persuasive here. *Le Vecke v. Griesedieck Western Brewery Co.*, dealt with whether a foreign corporation that was not based in California was subject to local service of process.  233 F.2d 772, 776 (9th Cir. 1956).  The Ninth Circuit ultimately ruled that the foreign corporation was not subject to local service of process,

11

Case No.: 5:13-CV-01190-LHK
ORDER DENYING MOTION TO DISMISS

relying in part on a provision of the California corporations code that was repealed in 1976. *See id.* at 724. *Le Vecke* did not address whether distribution through an intermediary could satisfy the "expressly aimed" requirement. Furthermore, the *Le Vecke* court noted the limitations of its ruling when it stated that whether a corporation is subject to service of process in-state "of course, turns on its peculiar facts." *Id.* at 775.

In *Estwing Manufacturing Co. v. Superior Court of San Mateo County*, also cited by NPS, a man in California was injured by a hammer that he purchased from a local hardware company that was manufactured by an Illinois company. 275 P.2d 146, 147-48 (Cal. Ct. App. 1954). The California Court of Appeal ruled that there was no personal jurisdiction because the manufacturer had only put out a catalog and then filled orders of distributors, with no franchise agreements or other contracts. *Id.* Here, NPS has done much more than the defendant in *Estwing* because NPS had a more targeted relationship with its distributor. Unlike the defendant in *Estwing*, NPS allegedly entered into an exclusive relationship with a specific distributor, worked closely with that distributor to assist in the marketing and sale of its products in California and elsewhere, and encouraged that distributor to engage other retailers in the sale of its products. First Am. Compl. ¶¶ 27-29, 40, 45-46.

Finally, in *Bar's Leaks Western, Inc. v. Pollock*, also cited by NPS, California and Michigan plaintiffs brought copyright and trademark infringement claims against California and Pennsylvania defendants. 148 F. Supp. 710, 711 (N.D. Cal. 1957). The Pennsylvania defendants claimed they had only shipped their products to an independent distributor in California, and moved to dismiss on the grounds of improper service and venue. *Id.* at 712. The court dismissed the Pennsylvania defendants, on the grounds that venue was improper under 28 U.S.C. § 1391, as "the inconveniences associated with defending a suit in the state's federal court far outweigh the inconveniences visited upon the plaintiff . . . by his having to bring suit in a more appropriate forum." *Id.* at 714. The relevant part of the *Bar Leaks* decision did not discuss personal jurisdiction, or the express aiming requirement. Accordingly, it is of minimal relevance here.

For the foregoing reasons, the Court finds that AirWair has made a prima facie showing that NPS expressly aimed its actions at California.

### 3. Foreseeable Harm

The third and final prong of the purposeful direction inquiry is whether the defendant knew the brunt of the harm is likely to be suffered in the forum state. *Dole Food Co.*, 303 F.3d at 1111. There is foreseeable harm when a jurisdictionally sufficient amount of harm is suffered in the forum state. *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1207 (9th Cir. 2006). Under clearly established Ninth Circuit precedent, a plaintiff need not be a resident of the forum state in order to suffer foreseeable harm there: "In determining the situs of a corporation's injury, '[o]ur precedents recognize that in appropriate circumstances a corporation can suffer economic harm both where the bad acts occurred and where the corporation has its principal place of business.'" *Mavrix Photo*, 647 F.3d at 1231 (quoting *Dole Food Co.*, 303 F.3d at 1113); *see also Hustler*, 465 U.S. at 779 (holding that a plaintiff's residence in the forum state is not a separate requirement, and lack of residence will not defeat jurisdiction established on the basis of defendant's contacts). For the purpose of the foreseeable harm inquiry, "it does not matter that even more harm might have been suffered in another state."[2] *Yahoo! Inc.*, 433 F.3d at 1207. In the context of a suit for trademark infringement, where a plaintiff uses its trademark in a state, and the defendant subsequently infringes that trademark in the same state, it is foreseeable that "any infringement of those marks would create an injury which would be felt mainly in [that state]." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998), *modified as stated by Yahoo! Inc.*, 433 F.3d at 1207; *see also Guava Family, Inc. v. Guava Kids, LLC*, No. 12CV2239, 2013 WL 1742786, at *7 (S.D. Cal. Apr. 23, 2013) (allegation that defendant sells, distributes, and advertises its products using an infringing trademark throughout California sufficient to show "it was foreseeable that Plaintiff would be harmed by the sale of products

---

[2] NPS argued that any alleged harm is not felt in California, but in the United Kingdom where AirWair resides. Reply at 5-6. In support of this position, NPS identifies several cases that NPS claimed stand for the proposition that a corporation suffers harm at its principal place of business. *See id*. While it is correct that a corporation can suffer harm at its principal place of business, it is incorrect—and contrary to clearly established law—that a corporation can *only* suffer harm there. *Yahoo! Inc.*, 433 F.3d at 1207 (9th Cir. 2006) (as long as a "jurisdictionally sufficient amount of harm is suffered in the forum state, it does not matter that even more harm might have been suffered in another state."); *Hustler*, 465 U.S. at 785 (sustaining exercise of personal jurisdiction in New Hampshire even though "[i]t is undoubtedly true that the bulk of the harm done to petitioner occurred outside New Hampshire.")

13

Case No.: 5:13-CV-01190-LHK
ORDER DENYING MOTION TO DISMISS

bearing an infringing trademark, and foreseeable that some of this harm would occur in California.")

Here, AirWair's First Amended Complaint stated that it sells its trademarked footwear through its website, brick and mortar stores, and at major retailers in California, including AirWair stores in San Francisco and Los Angeles. First Am. Compl. ¶ 21. AirWair further alleged that NPS sold infringing footwear in California via its exclusive in-state distributor, Calceus. *Id*. at 41-42. In addition, AirWair has pled that when NPS and Calceus first engaged in negotiations to enter into an exclusive distribution agreement, the two parties "discussed the fact that they were introducing footwear in the United States that included AirWair's Trade Dress Marks, contemplating that it may draw legal attention from AirWair." *Id.* ¶ 30. AirWair has therefore made out a prima facie case that AirWair sold trademarked footwear in California, that NPS infringed that trademark in California, and that NPS was aware that its acts would cause harm to AirWair in California. Therefore, AirWair has satisfied the foreseeable harm inquiry. Moreover, AirWair has satisfied all three parts of the purposeful direction test.

### B. Claim Arising Out of Form-Related Activities

The second prong of the specific jurisdiction test requires that the plaintiff's claims arise out of defendant's forum-related activities. *Schwarzenegger*, 374 F.3d at 802. To determine whether the plaintiff's claims arise from the defendant's forum-related activities, courts use a traditional "but for" causation analysis. *Bancroft*, 223 F.3d at 1088. The Ninth Circuit has recognized that, in trademark infringement actions, if the defendant's infringing conduct harms the plaintiff in a forum state where plaintiff uses its trademark, this element is satisfied. *Panavision Int'l, L.P.*, 141 F.3d at 1322; *see also Vanity.com, Inc. v. Vanity Shop of Grand Forks, Inc.*, No. C 12-02912 SI, 2012 WL 4755041, at *4 (N.D. Cal. Oct. 4, 2012) (where "[defendant]'s dealings with California customers enable it to profit from its alleged [trademark infringement]" then plaintiff's "claims arise out of defendant's forum-related activities.")

Here, as discussed in Section III.A.3, *supra*, AirWair has established a prima facie case that NPS's sales of allegedly infringing footwear harmed AirWair in California. In addition, AirWair has pled that NPS's alleged infringement has damaged AirWair's "business, reputation, and

14

goodwill," caused AirWair to suffer "the loss of sales and profits," and diluted AirWair's trademark. *See* First Am. Compl. ¶ 48. Therefore, but for NPS's alleged infringement, AirWair would not have endured the harm it has now claimed. AirWair has established a prima facie case that its claim arises out of NPS's alleged infringement.

### C. Reasonableness

Once a plaintiff has met its burden on the first two prongs of the specific personal jurisdiction inquiry, the burden shifts to the defendant to show why the exercise of specific personal jurisdiction would not be reasonable and fair. *Schwarzenegger*, 374 F.3d at 802. Generally, a defendant must "present a compelling case that the exercise of jurisdiction would not be reasonable." *Id*. (internal quotation marks omitted). However, a plaintiff seeking to hale a foreign defendant into court in the United States must meet a "higher jurisdictional threshold" than is required when a defendant is a United States resident. *See Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1490 (9th Cir. 1993)

Seven factors are considered to determine whether personal jurisdiction is reasonable: (1) the extent of a defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Panavision*, 141 F.3d at 1323 "No one factor is dispositive; a court must balance all seven." *Id*.

#### 1. Purposeful Interjection

"Even if there is sufficient 'interjection' into the state to satisfy the [purposeful availment prong], the degree of interjection is a factor to be weighed in assessing the overall reasonableness of jurisdiction under the [reasonableness prong]." *Core-Vent Corp.*, 11 F.3d at 1488 (quoting *Insurance Co. of N. Am. v. Marina Salina Cruz*, 649 F.2d 1266, 1271 (9th Cir. 1981)). "The smaller the element of purposeful interjection, the less is jurisdiction to be anticipated and the less reasonable is its exercise." *Id*.

Here, the fact that NPS is based in the United Kingdom, and claims it does not have any officers, employees, registered agents, or property in California, tips against purposeful interjection.[3] *See* Castle Decl. ¶¶ 4, 8, 11 & 12. However, according to AirWair's First Amended Complaint, NPS negotiated with Calceus, a California business, for Calceus to become NPS's exclusive importer and distributor in North America. First Am. Compl. ¶¶ 28-29. NPS sold and shipped over 500 units of footwear to Calceus in California, and worked closely with Calceus to coordinate the marketing and sales of NPS's product in the United States, including California. *Id*. ¶¶ 40-41. Moreover, AirWair has alleged that NPS discussed with Calceus the possibility that NPS's sales of infringing footwear might draw the legal attention of AirWair. *Id*. ¶ 30. NPS therefore allegedly knew of the damage its sales might cause AirWair's trademark, a factor that tips in favor of finding a larger degree of purposeful interjection. *See Panavision*, 141 F.3d at 1323 (finding more purposeful interjection where there is knowledge of likely injury). The Court finds that this factor weighs in favor of finding that personal jurisdiction is reasonable.

### 2. Burden on Defendant

When considering the burden on the defendant, "unless the 'inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction.'" *Panavision*, 141 F.3d at 1323 (quoting *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128-29 (9th Cir. 1995)). Here, NPS has stated that forcing NPS to litigate in California would impose a great burden on NPS, but NPS makes no factual showing of this burden other than to point out that NPS's headquarters in the United Kingdom is 5,000 miles away. Reply at 8. However, while litigating this matter in California may impose some burden on NPS, concerns over exerting jurisdiction over international defendants have diminished as "progress in communications and transportation has made the defense of a suit in a foreign tribunal less burdensome." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 294 (1980) (quoting *Hanson v. Denckla*, 357 U.S. 235, 250–251 (1958)); *see also Panavision*, 141 F.3d at 1323 ("in this era of fax machines and discount air travel, requiring [defendant] to litigate in California is not constitutionally unreasonable.") NPS may confer with its local counsel by phone, fax, e-mail,

---

[3] AirWair appears not to argue that Calceus was NPS's agent in California.

video conference, or other forms of electronic communication. In light of the fact that "modern advances in communications and transportation have significantly reduced the burden on litigating in another country," *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988), the Court finds that NPS has not carried its burden to show that this factor tips in its favor, and therefore it is neutral.

### 3.  Conflict with the Sovereignty of Defendant's State

Conflict with the sovereignty of a defendant's state requires "an examination of the competing sovereign interests in regulating [the defendant's] behavior." *Dole Food Co.*, 303 F.3d at 1115. However, since sovereignty concerns inevitably arise whenever a U.S. court exercises jurisdiction over a foreign national, this factor is "by no means controlling," *Ballard v. Savage,* 65 F.3d 1495, 1501 (9th Cir. 1995); otherwise "it would always prevent suit against a foreign national in a United States court," *Gates Learjet Corp. v. Jensen,* 743 F.2d 1325, 1333 (9th Cir. 1984). Here, the United Kingdom has some interest in regulating the conduct of its resident corporations. However, AirWair's complaint only raises questions of U.S. and California law; it does not allege any cause of action under the laws of the United Kingdom, or any other sovereign country. Therefore, this factor is at best neutral.

### 4.  California's Interest

California has a strong interest in discouraging trademark infringement injuries that occur within the state. *See Fujitsu Ltd. v. Belkin Int'l, Inc.*, 782 F. Supp. 2d 868, 885 (N.D. Cal. 2011) (finding California has a strong interest in preventing patent infringement injury within the state, even where committed by a foreign Taiwanese company); *Beverly Hills Fan. Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1568 (Fed. Cir. 1994) (forum state "has an interest in discouraging injuries that occur within the state" including injuries stemming from patent infringement). This interest derives in part from California's "strong interest in protecting its citizens from trademark infringement and consumer confusion." *Nissan Motor Co. v. Nissan Computer Corp.*, 89 F. Supp. 2d 1154, 1161 (C.D. Cal. 2000). In addition, California has an interest in adjudicating actions in which a California company is used to perpetuate trademark infringement. *See DFSB Kollective Co.*, 2011 WL 6730678, at *5 (California has an interest in adjudicating dispute where "California

companies [are used] to perpetuate . . . copyright infringement"). Therefore the Court finds this factor weighs in favor of reasonableness.

### 5. Efficient Resolution

The Ninth Circuit has held that efficient resolution "focuses on the location of the evidence and witnesses. It is no longer weighed heavily given the modern advances in communication and transportation." *Panavision*, 141 F.3d at 1323 (internal citation omitted). Further, "electronic access to documents makes the location of . . . evidence far less important to efficient resolution of the case." *Anspach v. Meyer*, No. CV-13-01877, 2014 WL 345676, at *5 (D. Ariz. Jan. 30, 2014). Here, witnesses for NPS and AirWair may have to engage in significant travel to this forum, making resolution less efficient. However, Calceus, which is based in California, may also play a central role in any trial, and therefore California would be the most efficient forum for any witnesses from Calceus. On balance, and considering the Ninth Circuit has explained that this factor is not weighed heavily, this factor is neutral.

### 6. Convenience to Plaintiff

"In evaluating the convenience and effectiveness of relief for the plaintiff, we have given little weight to the plaintiff's inconvenience." *Panavision*, 141 F.3d at 1324; *see also Dole Food Co.*, 303 F.3d at 1116 ("[I]n this circuit, the plaintiff's convenience is not of paramount importance."). Although AirWair is from the United Kingdom, AirWair chose to litigate in this forum. Further, AirWair's inconvenience is mitigated somewhat by the fact that it has a presence in California with stores in San Francisco and Los Angeles. Compl. ¶ 21. Therefore this factor, although given little weight, is neutral.

### 7. Alternative Forum

NPS has contended that AirWair should have filed this lawsuit in the United Kingdom, the home country for both parties. Reply at 9. However, AirWair raises no claims under the laws of the United Kingdom; to the contrary, all of AirWair's prayers for relief arise under U.S. or California law. *See* First Am. Compl. at 10-14. NPS also does not establish that AirWair could assert its claims for U.S. and California trademark infringement in the United Kingdom. The Court finds that this factor weighs in favor of reasonableness.

On balance, three factors in the reasonableness test weigh in AirWair's favor, and the remaining are neutral. The Court therefore finds that NPS has not satisfied its burden to show that the exercise of specific personal jurisdiction would be unreasonable.

**IV.     CONCLUSION**

For the foregoing reasons, the Court DENIES NPS's motion to dismiss.

**IT IS SO ORDERED.**

Dated: November 12, 2014



LUCY H. KOH
United States District Judge

Case No.: 5:13-CV-01190-LHK
ORDER DENYING MOTION TO DISMISS