1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| AIRWAIR INTERNATIONAL LTD., | Case No.:13-CV-01190-LHK |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND MOTION TO STRIKE** |
| v. | |
| MATTHEW K. SCHULTZ, et al., | Re: Dkt. No. 52 |
| Defendants. | |

Before the Court is a motion to dismiss counterclaims and to strike affirmative defenses filed by Plaintiff AirWair International Ltd. ("AirWair"). ECF No. 52 ("Mot."). AirWair moves to dismiss all of the counterclaims and to strike some of the affirmative defenses of Defendant NPS (Shoes) Ltd. ("NPS"). *See* ECF No. 49 ("Aff. Def." or "Countercl."). Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument, and hereby VACATES the hearing scheduled for March 26, 2015, at 1:30 p.m. The case management conference, also scheduled for March 26, 2015, at 1:30 p.m, remains as scheduled. Having considered the parties' arguments and the applicable law, the Court GRANTS IN PART AND DENIES IN PART AirWair's motion, for the reasons stated below.

## I. BACKGROUND

### A. Factual Background

United States District Court
Northern District of California

AirWair, a company based in the village of Wollaston, England, designs, manufactures, markets, and sells footwear under the Dr. Martens trademark. ECF No. 28 ("First Am. Compl.") ¶¶ 1, 11. AirWair holds several registrations with the U.S. Patent and Trademark Office for the trade dress of Dr. Martens footwear, including: "the combination of yellow stitching in the welt area and a two-tone grooved sole edge" ( "'751 Mark"); yellow "welt stitch located around the perimeter of footwear" ("'750 Mark"); "the design of a sole edge including longitudinal ribbing, and a dark color band over a light color" ("'349 Mark"); and "longitudinal ribbing and a dark color band over a light color on the outer sole edge, welt stitching, and a tab at the top back heel of footwear" ("'976 Mark") (collectively, "Marks"). *Id.* ¶ 14. According to AirWair, these trademarks have been in use for 50 years, and have been used in the United States since 1984. *Id.*

NPS is a British Limited Company also located in Wollaston, England. NPS manufactures, advertises, distributes, and sells footwear under the Solovair brand. *Id.* ¶ 3. AirWair alleges that several of NPS's Solovair footwear products sold in the United States copy the trade dress of AirWair's Dr. Martens footwear and therefore infringe AirWair's Marks. *Id.* ¶¶ 6, 18–25.

**B. Procedural Background**

On March 3, 2013, AirWair filed a complaint against NPS and a second defendant, Matthew K. Schultz. ECF No. 1. AirWair alleged that Matthew K. Shultz (doing business under the name Calceus LLC) distributed NPS's infringing footwear in the United States. *See id* ¶¶ 4-5. On July 7, 2014, the Court approved a consent judgment between Plaintiff and defendant Matthew K. Schultz/Calceus.[1] ECF No. 20.

On July 18, 2014, NPS filed a motion to dismiss for lack of personal jurisdiction. ECF No. 23. In response, on July 29, 2014, Plaintiff filed a First Amended Complaint. *See* First Am. Compl. In its First Amended Complaint, AirWair alleges claims of trademark infringement, federal unfair competition and trademark dilution, all in violation of the Lanham Act; unfair

---

[1] On August 20, 2014, the Court approved an amended consent judgment between AirWair and defendant Matthew K. Schultz/Calceus. ECF No. 32.

2

United States District Court
Northern District of California

competition under California Business & Professions Code § 17200, *et seq.*; common law unfair competition; and trademark dilution under California Business & Professions Code § 14330, *et seq. Id.* ¶¶ 49-74. AirWair seeks injunctive relief and monetary damages. *Id.* at 14-15.

On August 12, 2014, NPS filed a renewed motion to dismiss for lack of personal jurisdiction. ECF No. 30. On November 12, 2014, the Court denied NPS's motion to dismiss. ECF No. 45. NPS subsequently filed its Answer, including affirmative defenses and counterclaims, on November 26, 2014. ECF No. 49.

On December 17, 2014, AirWair filed the instant motion to dismiss and motion to strike. ECF No. 52. AirWair also concurrently filed a request for judicial notice. ECF No. 53. On December 31, 2014, NPS filed an opposition to AirWair's motion. ECF No. 55 ("Opp'n"). On January 7, 2015, AirWair filed a reply in support of its motion. ECF No. 56 ("Reply").

## II. LEGAL STANDARD

### A. Motion to Dismiss

A motion to dismiss a counterclaim brought pursuant to Federal Rule of Civil Procedure 12(b)(6) is evaluated under the same standard as a motion to dismiss a plaintiff's complaint. *See, e.g., Boon Rawd Trading Inter'l v. Paleewong Trading Co.*, 688 F. Supp. 2d 940, 947 (N.D. Cal. 2010). Under Rule 12(b)(6), a pleading may be dismissed as a matter of law due to lack of a cognizable legal theory, or insufficient facts to support a cognizable legal claim. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If a plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face," the complaint may be dismissed for failure to state a claim upon which relief may be granted. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); Fed. R. Civ. P. 12(b)(6). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal

United States District Court
Northern District of California

1    quotation marks omitted). For purposes of ruling on a Rule 12(b)(6) motion, a court "accept[s]

2    factual allegations in the complaint as true and construe[s] the pleadings in the light most

3    favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025,

4    1031 (9th Cir. 2008). If a motion to dismiss is granted, a court should "freely" give leave to amend

5    when justice so requires. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir.

6    2003); Fed. R. Civ. P. 15(a).

7        **B.   Motion to Strike**

8            Federal Rule of Civil Procedure 8(b)(1) requires a party to "state in short and plain terms

9    its defenses to each claim asserted against it." Rule 8(c) similarly requires that a party

10   "affirmatively state any avoidance or affirmative defense." Rule 12(f) permits a court to "strike

11   from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous

12   matter." A Rule 12(f) motion to strike serves "to avoid the expenditure of time and money that

13   must arise from litigating spurious issues by dispensing with those issues prior to trial."

14   *SidneyVinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983); *see also Fantasy, Inc. v.

15   Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds,* 510 U.S. 517 (1994). A

16   defense may be stricken as insufficient if it fails to give plaintiff "fair notice" of the

17   defense. *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979); *see generally* Fed. R. Civ.

18   P. 8. A court may also strike from an answer matter that is immaterial, i.e., "that which has no

19   essential or important relationship to the claim for relief or the defenses being plead," or matter

20   that is impertinent, i.e., that which does not pertain, and is not necessary, to the issues in question.

21   *Fantasy*, 984 F.2d at 1527.

22           This Court, as well as the vast majority of district courts, has held that the heightened

23   pleading standard for complaints articulated in *Twombly* and extended to all civil complaints in

24   *Iqbal* applies to affirmative defenses. *See Perez v. Gordon & Wong Law Group, P.C.*, No. 11-CV-

25   03323-LHK, 2012 WL 1029425, at *8 (N.D. Cal. March 26, 2012) (collecting cases). "This

26   standard 'serve[s] to weed out the boilerplate listing of affirmative defenses which is

27

28

Case No.: 13-CV-01190-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND MOTION TO STRIKE

United States District Court
Northern District of California

commonplace in most defendants' pleadings where many of the defenses alleged are irrelevant to the claims asserted.'" *Id.* (quoting *Barnes v. AT&T Pension Benefit Plan-Nonbargained Program,* 718 F. Supp. 2d 1167, 1172 (N.D. Cal. 2010)). "This standard is also consistent with *Iqbal*'s admonition that fair notice pleading under Rule 8 is not intended to give parties free license to engage in unfounded fishing expeditions on matters for which they bear the burden of proof at trial." *Id.* (citing *Iqbal*, 556 U.S. at 678-79). Therefore, "[w]hile a defense need not include extensive factual allegations in order to give fair notice, bare statements reciting mere legal conclusions may not be sufficient." *Id.* (internal quotation marks omitted). In order to satisfy Rule 8, "a defendant's pleading of affirmative defenses must put a plaintiff on notice of the underlying factual bases of the defense." *Id.* at *8 (citing *Dion v. Fulton Friedman & Gullace LLP*, No. 11-2727 SC, 2012 WL 160221, at *2 (N.D. Cal. Jan.17, 2012)).

## III. DISCUSSION

### A. Judicial Notice

The Court first addresses AirWair's request for judicial notice. ECF No. 53. In general, a court may take judicial notice of matters that are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Matters which are appropriate subjects of judicial notice include "matters of public record." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). Here, AirWair requests judicial notice of court records in other related federal cases. *See* ECF No. 53, at 5-6. These are matters of public record, and a court may take judicial notice of records or proceedings in other cases. *See Holder v. Holder*, 305 F.3d 854, 866 (9th Cir. 2002) (taking judicial notice of records in another court proceeding). Accordingly, AirWair's request for judicial notice is GRANTED.

The Court now turns to AirWair's motion to dismiss and to strike.

### B. NPS's Allegation of Fraud on the U.S. Patent and Trademark Office

In its responsive pleading, NPS alleges that S.W. Griggs ("Griggs"), the managing director of R. Griggs Group ("Griggs Group"), AirWair's predecessor-in-interest, committed fraud on the

5

United States District Court
Northern District of California

United States District Court
Northern District of California

U.S. Patent and Trademark Office ("PTO") when applying to register the Marks by concealing the fact that other third parties used the Marks. Specifically, NPS alleges that Griggs submitted declarations under oath in support of the Griggs Group's registration applications for the Marks affirming, among other things, that "no other person, firm, corporation, or association has the right to use said mark[s] in commerce, either in the identical form or in such near resemblance thereto." Countercl. ¶¶ 16, 22, 30, 39. NPS alleges that these statements were fraudulent because Griggs failed to disclose that Griggs was "aware of the various third parties that used the [Marks] . . . and knowingly concealed this information in an effort to get the [PTO] to grant it a trademark registration. *Id.* ¶¶ 17, 23, 31, 40. Based on this allegation of fraud in the procurement, NPS asserts a counterclaim of non-infringement, Countercl. ¶ 51 (first counterclaim)[2]; a counterclaim of cancellation of the Marks, *id.* ¶¶ 67-68 (third counterclaim); and a counterclaim of unfair competition, *id.* ¶ 72 (fourth counterclaim); as well as an affirmative defense of unclean hands, Aff. Def. ¶¶ 14-15. In its motion, AirWair contends that NPS does not sufficiently allege fraud in the procurement and thus moves to dismiss NPS's counterclaims of non-infringement, cancellation of the Marks, and unfair competition, and to strike NPS's affirmative defense of unclean hands.[3] Mot. at 4-8; 20-21. The Court will first discuss the legal standard to plead fraud in the procurement, and then address the sufficiency of NPS's allegations.

### 1.  Legal Standard to Allege Fraud in the Procurement

"Fraud in procurement of a trademark registration may be raised as a ground for cancellation in civil litigation, in which case it may function as a 'defense' to a claim of trademark

---

[2] NPS's counterclaim of non-infringement is also based on the allegation that AirWair's lawsuit is barred by the applicable statute of limitations, and the doctrines of laches, waiver, and acquiescence. Countercl. ¶ 51.

[3] AirWair also moves to dismiss NPS's allegation of fraud in the procurement on the grounds that NPS fails to allege fraud with the particularity required by Federal Rule of Civil Procedure 9(b). Mot. at 10. Rule 9(b) requires that allegations of fraud "be stated with particularity." Rule 9(b)'s heightened pleading requirement applies to claims of fraud in the procurement of trademarks. *Aureflam Corp. v. Pho Hoa Phat I, Inc.*, 375 F. Supp. 2d 950, 953 (N.D. Cal. 2005). However, because the Court herein concludes that NPS fails to allege the requisite elements of fraud in the procurement, the Court need not address AirWair's Rule 9(b) argument.

6

infringement." *eCash Techs., Inc. v. Guagliardo*, 127 F. Supp. 2d 1069, 1079 (C.D. Cal. 2000). Such fraud "occurs when an applicant knowingly makes false, material representations of fact in connection with an application." *Quiksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749, 755 (9th Cir. 2006) (internal quotation marks omitted).

To allege a claim of cancellation based on fraud in the procurement, a party must allege: "(1) a false representation regarding a material fact; (2) the registrant's knowledge or belief that the representation is false; (3) the registrant's intent to induce reliance upon the misrepresentation; (4) actual, reasonable reliance on the misrepresentation; and (5) damages proximately caused by that reliance."[4] *Hokto Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d 1085, 1097 (9th Cir. 2013) (citing *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1444 (9th Cir. 1990)). "A false representation in the original trademark application . . . may be grounds for cancellation if all five requirements are met." *Id.*

A party may allege fraud in the procurement of a trademark by showing, *inter alia*, that a trademark applicant knowingly and falsely declared under oath in conjunction with the trademark application that "no other person, firm, corporation, or association . . . has the right to use such mark in commerce." *Rosso & Mastracco, Inc. v. Giant Food Inc.*, 720 F.2d 1263, 1266 (Fed. Cir.

---

[4] In its Motion, AirWair argues that a party alleging fraud in the procurement must satisfy the alternate pleading requirements in *Hana Financial, Inc. v. Hana Bank*, 500 F. Supp. 1228, 1245 (C.D. Cal. 2007) (requiring a party alleging fraud in the procurement to allege: "(1) there was in fact another use of the same or a confusingly similar mark at the time the oath was signed; (2) the other user had legal rights superior to applicant's; (3) applicant knew that the other user had rights in the mark superior to applicant's, and either believed that a likelihood of confusion would result from applicant's use of its mark or had no reasonable basis for believing otherwise; and that (4) applicant, in failing to disclose these facts to the Patent and Trademark Office, intended to procure a registration to which it was not entitled." The *Hana* court, in developing this standard of pleading, cited and relied on decisions of the PTO's Trademark Trial and Appeal Board. *Id.* However, only a couple of district courts in this Circuit have followed *Hana*. *See Gibson Brands, Inc. v. John Hornby Skewes & Co.*, No. CV 14-00609 DDP SSX, 2014 WL 5419512, at *5 (C.D. Cal. Oct. 23, 2014); *Professional's Choice Sports Med. Prods., Inc. v. Eurow & O'Reilly Corp.*, No. 13CV1484 AJB KSC, 2014 WL 524007, at *4 (S.D. Cal. Feb. 10, 2014). Moreover, the Ninth Circuit continues to follow the *Robi* standard for fraudulent procurement, as most recently described in *Hokto Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d 1085, 1097 (9th Cir. 2013). Accordingly, this Court follows the Ninth Circuit's standard for pleading fraud in the procurement.

7

1983); *see also* 15 U.S.C. § 1051(a)(3)(D). However, there are limits on what a trademark applicant must disclose to the PTO. First, an applicant is not "obligate[d] . . . to investigate and report all other possible users of an identical or confusingly similar mark." *Rosso*, 720 F.2d at 1266. Rather, an applicant must only disclose "conflicting rights" of another user "which are *clearly established*, for example, by a court decree, by the terms of a settlement agreement, or by a registration." *Id*. (emphasis added); *see also Robi*, 918 F.2d at 1444 (trademark user made false oath in trademark registration application where he failed to acknowledge conflicting rights of another user which were clearly established by prior court decision). Second, the "'statement of an applicant that no other person 'to the best of his knowledge' has the right to use the mark does not require the applicant to disclose those persons whom he may have heard are using the mark *if he feels that the rights of such others are not superior to his.*'" *Quiksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749, 755 (9th Cir. 2006) (quoting *Yocum v. Covington*, 216 U.S.P.Q. 210, 216-17 (T.T.A.B. 1982)) (emphasis in original). Therefore, "[i]n most cases, the registration applicant has no obligation to report other users." *eCash*, 210 F. Supp. 2d at 1149.

     With these standards in mind, the Court now turns to the sufficiency of NPS's allegations of fraud in the procurement.

### 2.       NPS's Allegations of Fraud in the Procurement

     As previously discussed, here NPS alleges that Griggs, when filing an application for registration of the Marks at issue in this litigation, also submitted signed declarations which stated in relevant part that "no other person, firm, corporation, or association has the right to use said mark[s] in commerce, either in the identical form or in such near resemblance thereto." Countercl. ¶¶ 16, 22, 30, 39; *see also* Aff. Def. ¶ 15 (alleging that "Plaintiff made fraudulent statements to the [PTO] to procure the rights in the trademarks it seeks to enforce against NPS"). NPS further alleges that Griggs' declarations were fraudulent because "[u]pon information and belief, Plaintiff and Griggs were aware of the various third parties that used the Purported Marks . . . at the time the above declaration was signed, and knowingly concealed this information in an effort to get the

8

[PTO] to grant it a trademark registration." Countercl. ¶¶ 17, 23, 31, 40. NPS also alleges that these "various third parties that used the Purported Marks" were "hundreds of manufacturers and/or retailers [that] openly offered for sale and sold" products containing the Marks, "including, but not limited to Vans, Hot Topic, Forever 21, Wet Seal, Sketchers USA, and H&M." Countercl. ¶ 67.

The Court finds that NPS's allegation of fraud in the procurement fails for two reasons. First, as previously discussed, a trademark applicant must only disclose "conflicting rights" of another user "which are clearly established" by, for instance, "a court decree, by the terms of a settlement, or by a registration." *Rosso*, 720 F.2d at 1266; *see also Robi*, 918 F.2d at 1444 (trademark applicant commits fraud in the procurement where he fails to acknowledge conflicting rights of another user which were clearly established by prior court decision). Here, NPS only alleges that Griggs failed to disclose in his sworn declarations that "various third parties . . . used the Purported Marks" at the time the declarations were signed. Countercl. ¶¶ 17, 23, 31, 40. However, Griggs was not obligated "to investigate and report all other possible users of an identical or confusingly similar mark." *Rosso*, 720 F.2d at 1266. Instead, NPS must allege that any of the rights of various third parties who also used the Marks were "clearly established" by, for instance, "a court decree . . . the terms of a settlement, or . . . a registration." *Id*. NPS has not done so here.

Second, NPS fails to allege that other purported users of the Marks had rights that were "superior to" those of the Griggs Group. *See Quiksilver, Inc.*, 466 F.3d at 755 (trademark applicant need not disclose other uses of the mark "if he feels that the rights of such others are not superior to his.") (internal quotation marks omitted). NPS does not allege that any of the "various third parties" who allegedly used the Marks had rights which were superior to Griggs' rights. *See* Countcl. ¶¶ 17, 23, 31, 40. Accordingly, NPS's allegation of fraud in the procurement is deficient for this additional reason.

### 3. NPS's Allegation that Griggs Failed to Disclose the Marks Were Generic

Case No.: 13-CV-01190-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND MOTION TO STRIKE

1   In its opposition, NPS contends—apparently for the first time—that NPS sufficiently

2 alleges fraud in the procurement because Griggs failed to disclose in his registration applications

3 that the Marks were generic. Opp'n at 5-6. Specifically, NPS argues that when NPS alleges that

4 "there were hundreds of third parties using the trade dress," NPS was alleging that the Marks were

5 actually generic, "(i.e. there were hundreds of third parties using the trade dress)." *Id*. NPS appears

6 to argue that because Griggs failed to disclose to the PTO that the Marks were generic, Griggs

7 thereby committed fraud on the PTO. *Id*.

8   In some circumstances, a party may be able to allege fraud in the procurement of a

9 trademark by alleging that the registrant fraudulently concealed from the PTO that the mark was

10 generic. *See Herschler v. Gateway Prods., Inc.*, 61 F.3d 919, 919 (Fed. Cir. 1995) (upholding

11 district court's ruling that trademark registration was procured by fraud where the "mark had been

12 used as a generic shorthand acronym for the compound prior to registration" and the registrant

13 made knowingly false statements "during prosecution of the trademark application that MSM had

14 no generic significance in the trade"). However, to adequately allege that a mark is generic, a party

15 must allege, *inter alia*, that the mark is "not associated by the public with any particular source,"

16 and that the mark is "generic" for the services or products recited in the registration. *First Serv.*

17 *Networks, Inc. v. First Serv. Maint. Grp., Inc.*, No. CV-11-01897-PHX-DGC, 2012 WL 5878837,

18 at *2 (D. Ariz. Nov. 21, 2012) (internal quotation marks omitted). In its counterclaims and

19 affirmative defense based on fraud in the procurement, NPS does not allege that Griggs failed to

20 disclose that the Marks were "not associated by the public with any particular source," or that the

21 Marks were "generic" for the footwear recited in the Marks' registration. *Id.* Rather, NPS only

22 alleges that "hundreds of manufacturers and/or retailers openly offered for sale and sold" products

23 containing the Marks. Countercl. ¶ 67. NPS cites no authority, and this Court located none, which

24 states that merely alleging that "hundreds of third parties [were] using the [Marks]" equates to an

25 allegation that the marks at issue are generic. *See* Opp'n at 5. Accordingly, even assuming that

26 NPS intended to allege that Griggs knowingly concealed the fact that the Marks were generic,

27

28

Case No.: 13-CV-01190-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND MOTION TO STRIKE

1    NPS fails to sufficiently so allege.[5]

2         For the reasons stated above, the Court finds that NPS fails to allege the requisite elements

3    of fraud in the procurement of the Marks. Accordingly, the Court GRANTS AirWair's motion to

4    dismiss NPS's counterclaims for cancellation of the Marks and unfair competition, and AirWair's

5    motion to strike NPS's affirmative defense of unclean hands. Moreover, the Court GRANTS

6    AirWair's motion to dismiss NPS's non-infringement counterclaim to the extent that the

7    counterclaim is based on NPS's allegation of fraud in the procurement. However, NPS can cure

8    the defects identified herein by alleging sufficient facts to establish the requisite elements of fraud

9    in the procurement. Accordingly, the Court grants NPS leave to amend its counterclaims and

10   affirmative defense based on fraud in the procurement. *See Eminence Capital*, 316 F.3d at 1051

11   (leave to amend should be "freely given when justice so requires").

### C.  NPS's Allegations of Laches, Waiver, Acquiescence, Estoppel and Statute of Limitations

12        In its non-infringement counterclaim, NPS alleges that AirWair's claims are "barred by the

13   applicable statute of limitations, as well as the doctrines of laches, waiver, and acquiescence."

14   Countercl. ¶ 51. AirWair moves to dismiss these allegations, and to strike NPS's affirmative

15   defenses based on laches, waiver, acquiescence, and the statute of limitations. Mot. at 14-15; 18-

16   20. AirWair also separately moves to strike NPS's affirmative defense of estoppel. Mot. at 20. The

17   Court addresses each element of AirWair's motion in turn.

### 1.  Laches

18        NPS asserts an affirmative defense of laches based on the fact that AirWair "knowingly

---

[5] As discussed in Section III.D, *infra*, NPS sufficiently alleges that AirWair's Marks are generic in NPS's *separate* counterclaim and affirmative defense of invalidity. This is because for its counterclaim and defense of invalidity, NPS alleges that the Marks "depict[] . . . common characteristics of the entire genre of footwear that is work centric," and that "consumers simply do not associate the Purported Marks solely with Plaintiff." Countercl. ¶¶ 57-58. Accordingly, NPS adequately alleges that the Marks are "not associated by the public with any particular source," and that the Marks are "generic" for the services or products recited in the registration. *First Serv. Networks*, 2012 WL 5878837, at *2. However, NPS omits these allegations from NPS's claim of fraud on the PTO.

Case No.: 13-CV-01190-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND MOTION TO STRIKE

United States District Court
Northern District of California

1   allowed NPS to use [and] sell Solovair Footwear without any objection for at least 8 years" in the

2   United States before AirWair filed the instant lawsuit. Aff. Def. ¶ 5. NPS similarly asserts its

3   counterclaim of non-infringement based in part on NPS's claim that AirWair's suit is "barred by

4   . . . the doctrine[] of laches." Countercl. ¶ 51. AirWair moves to dismiss and to strike NPS's

5   counterclaim and affirmative defense of laches on the grounds that NPS fails to allege the requisite

6   elements of laches. Mot. at 15, 19.

7        A defense of laches "can defeat an otherwise valid claim under the Lanham Act."

8   *Tillamook Country Smoker, Inc. v. Tillamook County Creamery Ass'n*, 465 F.3d 1102, 1108 (9th

9   Cir. 2006) (internal quotation marks omitted). A laches defense is premised on the maxim that

10  "one who seeks the help of a court of equity must not sleep on his rights." *Jarrow Formulas, Inc.*

11  *v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002). To prevail on a laches defense, a

12  defendant must show two elements: (1) the claimant unreasonably delayed in filing suit based on

13  when the claimant knew or should have known of the allegedly infringing conduct; and (2) as a

14  result of the delay, the defendant suffered prejudice. *Danjaq LLC v. Sony Corp.*, 263 F.3d 942,

15  952-56 (9th Cir. 2001). "Prejudice" means that the claimant "took actions or suffered

16  consequences that it would not have, had the plaintiff brought suit promptly." *Id.* at 955. Examples

17  of such prejudice are where, *inter alia*, a defendant "change[s] their . . . distribution activities in

18  reliance on [plaintiff's] conduct," or where a defendant makes "continuing investments and

19  outlays . . . in connection with the operation of its business." *Id.* (internal quotation marks

20  omitted).

21       Here, in its affirmative defense and counterclaim of laches, NPS alleges that NPS "has

22  been openly offering for sale and selling footwear under the brand name Solovair in the United

23  States since before 2006 without *any* opposition from Plaintiff." Aff. Def. ¶ 5 (emphasis in

24  original); *see also* Countercl. ¶ 48 (same). NPS further alleges that "by virtue of NPS' open and

25  ubiquitous use, advertisement and sale of the Solovair Footwear, Plaintiff knowingly allowed NPS

26  to use [and] sell the Solovair footwear without any objection for at least 8 years." Aff. Def. ¶ 5.

27

28

United States District Court
Northern District of California

1    Accordingly, NPS claims that NPS "relied on the failure of Plaintiff to act" by continuing to sell

2    Solovair footwear "in the United States since before 2006." *Id.*; *see also* Countercl. ¶ 51 (alleging

3    that NPS has "continued to do business in the United States").

4       The Court finds that NPS's counterclaim and affirmative defense of laches fail because

5    nowhere in its affirmative defenses or its counterclaims does NPS allege that it suffered

6    "prejudice." *Danjaq*, 263 F.3d at 955. NPS does not allege that it "changed [its] distribution

7    activities in reliance on [AirWair's] conduct," or that NPS "continu[ed] investments and outlays

8    . . . in connection with the operation of its business." *Id.* The closest NPS appears to come to

9    making an allegation of prejudice is when NPS claims it "has continued to do business in the

10    United States." Countercl. ¶ 51; *see also* Aff. Def. ¶ 5 (alleging NPS "would be materially

11    prejudiced if ordered to stop offering for sale and selling the same footwear it has been since in the

12    United States since before 2006 [sic]."). However, NPS cites no authority for the proposition that

13    continuing to do business, without more, constitutes prejudice.[6]

14       Accordingly, the Court GRANTS AirWair's motion to strike NPS's affirmative defense of

15    laches. The Court also GRANTS AirWair's motion to dismiss NPS's non-infringement

16    counterclaim to the extent the counterclaim is based on laches. However, NPS is given leave to

17    amend the cure the deficiencies identified herein. *See Eminence Capital*, 316 F.3d at 1051 (leave

18    to amend should be "freely given when justice so requires").

19       **2. Acquiescence**

20       In its pleading, NPS asserts an affirmative defense of acquiescence based on, *inter alia*, the

21    fact that AirWair "communicated with NPS through its conduct and/or behaved in a manner

22    through action and inaction that [AirWair] would not assert any of the claims it now asserts, so

23

24    ───────────────

25    [6] The Court also notes that NPS's counterclaim for laches fails for the additional reason that NPS does not allege that AirWair "knew or should have known" of the allegedly infringing conduct.

26    *Danjaq*, 263 F.3d at 952. NPS alleges in connection with NPS's *affirmative defense* of non-infringement that AirWair "knowingly allowed NPS to use [and] sell the Solovair Footwear

27    without any objection." Aff. Def. ¶ 5. However, NPS omits this allegation from NPS's *counterclaim* of laches. *See* Countercl. ¶¶ 48-51.

13

28    Case No.: 13-CV-01190-LHK

1  that NPS had a reason to believe, and did in fact believe that its business activities in selling the

2  Solovair Footwear was of no consequence to Plaintiff." Aff. Def. ¶ 6. NPS also asserts its

3  counterclaim of non-infringement based in part on the defense of acquiescence. Countercl. ¶ 51

4  (alleging that AirWair has "knowingly sat on any alleged rights they claimed to the mark for at

5  least 4 or more years, with no viable excuse, and to the detriment of NPS"). AirWair moves to

6  strike NPS's affirmative defense of acquiescence, and to dismiss NPS's counterclaim of non-

7  infringement to the extent it is based on acquiescence. Mot. at 15, 18-20.

8  　　"Estoppel by acquiescence includes the two elements of laches . . . and adds (3) affirmative

9  conduct inducing the belief that [the plaintiff] has abandoned its claim against the alleged

10  infringer, and (4) detrimental reliance by infringer." *E&J Gallo Winery v. Pasatiempos Gallo,*

11  *S.A.*, 905 F. Supp. 1403, 1414 (E.D. Cal. 1994). "The distinguishing feature of the acquiescence

12  defense [from a laches defense] is the element of *active* or *explicit* consent to the use of an

13  allegedly infringing mark." *adidas-Am., Inc. v. Payless Shoesource, Inc.*, 546 F. Supp. 2d 1029,

14  1075 (D. Or. 2008) (internal quotation marks omitted and emphasis in original).

15  　　As previously discussed, the Court herein finds that NPS's counterclaim and affirmative

16  defense of laches are inadequately pled because, *inter alia*, NPS fails to allege that it suffered the

17  requisite prejudice. *See* Section III.C.1, *supra*. Accordingly, because NPS's counterclaim and

18  affirmative defense of laches fail, NPS's counterclaim and affirmative defense of acquiescence fail

19  as well. *See Gracie v. Gracie*, Case No. C 94-4156 SC, 1998 WL 164955, at *3 (N.D. Cal. March

20  13, 1998) ("The failure of plaintiffs' laches defense compels the failure of plaintiffs' defense of

21  estoppel by acquiescence."), *rev'd on other grounds by Gracie v. Gracie*, 217 F.3d 1060 (9th Cir.

22  2000). Therefore, AirWair's motion to strike NPS's affirmative defense of laches is GRANTED.

23  AirWair's motion to dismiss NPS's non-infringement counterclaim to the extent it is based on

24  acquiescence is also GRANTED. However, NPS is given leave to amend the cure the deficiency

25  identified herein. *See Eminence Capital*, 316 F.3d at 1051 (leave to amend should be "freely given

26  when justice so requires").

27  　　**3.  Waiver**

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1    In its pleadings, NPS alleges an affirmative defense of waiver based on the claim that

2    AirWair's "conduct was inconsistent with any intent to enforce its alleged trademark rights." Aff.

3    Def. ¶ 6. NPS's counterclaim of non-infringement is also based on a defense of waiver. Countercl.

4    ¶ 51. AirWair moves to strike NPS's affirmative defense of waiver, and to dismiss NPS's

5    counterclaim of non-infringement to the extent it is based on waiver. Mot. at 15, 19.

6    "Waiver is the intentional relinquishment of a known right with knowledge of its existence

7    and the intent to relinquish it." *United States v. King Features Entm't, Inc.*, 843 F.2d 394, 399 (9th

8    Cir. 1988). "An implied waiver of rights will be found where there is 'clear, decisive and

9    unequivocal' conduct which indicates a purpose to waive the legal rights involved." *United States

10   v. Amwest Surety Ins. Co.*, 54 F.3d 601, 602-03 (9th Cir. 1995) (quoting *Groves v. Prickett*, 420

11   F.2d 1119, 1125 (9th Cir.1970); *see also Duncan v. Office Depot*, 973 F. Supp. 1171, 1177 (D. Or.

12   1997) ("Although mere silence can be a basis for a claim of estoppel when a legal duty to speak

13   exists, waiver must be manifested in an unequivocal manner."). "[F]ailure to act, without more, is

14   insufficient evidence of a trademark owner's intent to waive its right to claim infringement."

15   *Novell, Inc. v. Weird Stuff, Inc.*, No. C92-20467 JW/EAI, 1993 WL 13767335, at *13 (N.D. Cal.

16   Aug. 2, 1993).

17   Here, NPS bases its affirmative defense and counterclaim of waiver on, *inter alia*, the

18   allegation that AirWair waived any right to claim infringement of the Marks because the Griggs

19   Group, AirWair's predecessor-in-interest, sent NPS a letter in 1995 (the "1995 Letter"). Aff. Def.

20   ¶ 3; Countercl. ¶ 13. In the 1995 Letter, the Griggs Group "request[ed] that NPS cease and desist

21   manufacturing footwear under the Solovair Footwear, as it allegedly infringed rights to the design

22   of footwear bearing the Dr. Marten's trademark." Aff. Def. ¶ 3; Countercl. ¶ 13. NPS further

23   claims that "[a]fter months of correspondence, the Griggs Group <u>never filed a lawsuit or otherwise

24   pursued NPS</u>." Aff. Def. ¶ 3 (emphasis in original); Countercl. ¶ 13 (emphasis in original). Rather,

25   NPS alleges that "counsel for Griggs Group informed NPS that they were <u>*not*</u> instructed by the

26   Griggs Group to file a lawsuit or any other *ex parte* proceeding. If the decision were to change,

27

28

15

Case No.: 13-CV-01190-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND MOTION TO STRIKE

1  counsel for Griggs Group agreed to notify NPS." Aff. Def. ¶ 3 (emphasis in original); Countercl. ¶

2  13 (emphasis in original). NPS further contends that it "never received any such notification." Aff.

3  Def. ¶ 3; Countercl. ¶ 13.

4      The Court finds NPS sufficiently alleges a defense of waiver.[7] NPS alleges that the 1995

5  Letter instructed NPS to cease and desist manufacturing footwear that "infringed rights to the

6  design of footwear bearing the Dr. Marten's trademark." *See, e.g.*, Countercl. ¶ 13. NPS further

7  alleges that the Griggs Group subsequently informed NPS that the Griggs Group would not file a

8  lawsuit. *Id.* Accepting NPS's allegations as true and construing the pleadings in the light most

9  favorable to NPS, *Manzarek*, 519 F.3d at 1031, NPS alleges that the Griggs Group represented to

10 NPS that it would not enforce its rights as to the Marks. *See* Countercl. ¶ 13. Accordingly, NPS

11 alleges the Griggs Group "engag[ed] in 'conduct inconsistent with an intent to enforce that

12 [trademark] right,'" which is sufficient to support a plausible claim of waiver. *Eliminator Custom*

13 *Boats v. Am. Marine Holdings, Inc.*, No. ED CV 06-15-VBF EX, 2007 WL 4978243, at *6 (C.D.

14 Cal. Nov. 5, 2007) (*quoting Saverslak v. Davis-Cleaver Produce Co.*, 606 F.2d 208 (7th Cir.

15 1979)).

16     For the reasons stated above, the Court DENIES AirWair's motion to strike NPS's

17 affirmative defense of waiver, and DENIES AirWair's motion to dismiss NPS's counterclaim of

18 non-infringement to the extent it is based on waiver.

19     **4.  Estoppel**

20     In its affirmative defenses, NPS also asserts an affirmative defense of estoppel. Aff. Def.

21 ¶ 6. Specifically, NPS alleges that AirWair "has known about NPS for an extensive period of

22 time," and "had communicated to NPS, either actively or through inaction for years, that it did not

23 object to [NPS's] sale of the Solovair Footwear." *Id.* NPS also alleges that it "relied to its

24

25  [7] The Court notes that AirWair does not argue, at least at this juncture, that any representation by
    the Griggs Group with respect to enforcement of the Marks was not binding on AirWair. *See*
26  Reply at 8 ("Even assuming the alleged representations by counsel for Griggs were binding on
    AirWair and related to NPS' infringing sales in the United States in 2012, these allegations do not
27  establish waiver, acquiescence or estoppel."). Accordingly, the Court does not address this issue.

28
    Case No.: 13-CV-01190-LHK
    ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND MOTION TO STRIKE

1    detriment on Plaintiff's actions so that Plaintiff should be equitably estopped on its monetary and

2    injunctive claims." *Id.* In its motion, AirWair moves to strike this affirmative defense. Mot. at 20.

3    　　　"Unlike waiver, estoppel focuses not on a party's intent, but rather on the effects of his

4    conduct on another. Estoppel arises only when a party's conduct misleads another to believe that a

5    right will not be enforced and causes him to act to his detriment in reliance upon this belief."

6    *Novell*, 1993 WL 13767335, at *13 (internal quotation marks omitted). A defendant in a trademark

7    infringement lawsuit claiming estoppel must show: (1) that the plaintiff "knew [the defendant] was

8    selling potentially infringing" products; (2) the plaintiff's "actions or failure to act led [the

9    defendant] to reasonably believe that [the plaintiff] did not intend to enforce its trademark right"

10   against defendant; (3) that defendant did not know the plaintiff "actually objected to the sale of its

11   potentially infringing [product]"; and (4) due to its reliance on the plaintiff's actions, defendant

12   "will be materially prejudiced" if the plaintiff "is allowed to proceed with its claim." *adidas-Am.*,

13   546 F. Supp. 2d at 1075 (citing *Lehman v. United States,* 154 F.3d 1010, 1016 (9th Cir. 1998)).

14   "Where any one of the elements of equitable estoppel is absent, the claim must fail." *Am. Casualty*

15   *Co. v. Baker*, 22 F.3d 880, 892 (9th Cir. 1994) (internal quotation marks omitted).

16   　　　Here, NPS fails to plead the third element of estoppel, specifically that NPS "did not know

17   that [AirWair] actually objected to the sale of its potentially infringing footwear." *adidas-Am.*, 546

18   F. Supp. 2d at 1075. In its affirmative defenses, NPS makes no factual allegation to support its

19   claim that NPS did not know AirWair objected to NPS's use of the Marks. Indeed, NPS's factual

20   allegations show the opposite. Specifically, NPS alleges that the Griggs Group, AirWair's

21   predecessor-in-interest, sent NPS the 1995 Letter "requesting that NPS cease and desist

22   manufacturing footwear under the Solovair Footwear, as it allegedly infringed Plaintiff's

23   predecessor's rights to the design of footwear bearing the Dr. Marten's trademark." Aff. Def. ¶ 3.

24   On its face, this allegation suggests NPS *knew* there was an outstanding objection to its use of the

25   Marks. *Cf. Gibson*, 2014 WL 5419512, at *3 (defendant sufficiently pled estoppel where

26   defendant alleged that plaintiff "told [defendant] that its designs were 'not substantially similar' to

27

28

Case No.: 13-CV-01190-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND MOTION TO STRIKE

United States District Court
Northern District of California

1   Plaintiff's mark," thereby giving defendant "good reason to believe that Plaintiff did not object to

2   its use of the design"). Moreover, because NPS fails to sufficiently allege one of the required

3   elements of estoppel, NPS's affirmative defense of estoppel fails. *See Am. Casualty*, 22 F.3d at

4   892 ("Where any one of the elements of equitable estoppel is absent, the claim must fail.").

5          For the reasons stated above, AirWair's motion to strike NPS's affirmative defense of

6   estoppel is GRANTED. However, NPS may be able to cure its affirmative defense by alleging

7   additional facts to support a claim that NPS did not know AirWair actually objected to NPS's use

8   of the Marks.[8] Accordingly, the Court grants NPS leave to amend to cure its affirmative defense.

9   *See Eminence Capital*, 316 F.3d at 1051 (leave to amend should be "freely given when justice so

10  requires").

11         **5.   Statute of Limitations**

12         AirWair also challenges NPS's affirmative defense of statute of limitations, as well as

13  NPS's counterclaim of non-infringement to the extent it is based on the statute of limitations. *See*

14  Aff. Def. ¶ 12; Countercl. ¶¶ 48, 51. In general, the statute of limitations for a Lanham Act claim

15  brought in conjunction with a claim of trademark dilution under state law is four years. *Miller v.*

16  *Glenn Miller Prods.*, 318 F. Supp. 2d 923, 942 n.11 (C.D. Cal. 2004) (stating that "[t]he Lanham

17  Act does not contain a statute of limitations, and therefore Lanham Act claims are governed by the

18  analogous state statute of limitations," which is four years). The statutes of limitations for

19  statutory and common law unfair competition claims are also four years. *See Eliminator Custom*

20  *Boats*, 2007 WL 4978243, at *3 (statute of limitations for claim of common law unfair

21  competition claim is same as statute of limitations for state statutory unfair competition claim,

22  which is four years).

23

---

24  [8] The Court notes that, to the extent NPS's affirmative defense of estoppel would contradict any of
    the factual allegations elsewhere in NPS's pleading, this is permissible under the Federal Rules of
25  Civil Procedure. *See* Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or
    defenses as it has, regardless of consistency."); *Swormstedt v. Santa Maria Valley R. Co.*, No. CV
26  04-0372 DSF (SHX), 2004 WL 5458405, at *3 (C.D. Cal. Apr. 13, 2004) ("Federal Rule of Civil
    Procedure 8(e) plainly allows a party to plead inconsistent legal theories and factual allegations.").

27

28

Case No.: 13-CV-01190-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND MOTION TO STRIKE

United States District Court
Northern District of California

1    NPS alleges that AirWair's claim is barred by the statute of limitations because AirWair

2  "knowingly sat on any alleged rights they claimed to the mark" since NPS began selling Solovair

3  brand footwear in the United States "before 2006." Countercl. ¶¶ 48, 51; *see also* Aff. Def. ¶ 12

4  (alleging that "[e]ach of the purported claims set forth in this FAC are barred by the applicable

5  statutes of limitations" because "NPS has been selling the Solovair Footwear . . . in the United

6  States at least since before 2006"). Accepting NPS's allegations as true, NPS sufficiently alleges

7  that AirWair's claim is barred by the statute of limitations, as AirWair did not file the instant

8  litigation until 2013. *See* Compl. Accordingly, AirWair's motion to dismiss and to strike NPS's

9  counterclaim and affirmative defense based on the statute of limitations is DENIED.

10   **D.  NPS's Allegations Regarding Genericness and Lack of Distinctiveness**

11    Finally, AirWair moves to dismiss NPS's counterclaim for declaratory judgment of

12  invalidity. AirWair argues that NPS insufficiently alleges that the Marks are invalid because they

13  are generic or, with respect to the '349 Mark and '976 Mark, that they are not distinctive.[9] Mot. at

14  15-16. AirWair also moves to strike NPS's affirmative defense of invalidity based on genericness,

15  which AirWair alleges is inadequately pled. Mot. at 20.

16    Generic terms "are those that refer to 'the genus of which the particular product or service

17  is a species,' *i.e.,* the name of the product or service itself." *Advertise.com, Inc. v. AOL Adver.,*

18  *Inc.*, 616 F.3d 974, 977 (9th Cir. 2010) (quoting *Filipino Yellow Pages, Inc. v. Asian Journal*

19  *Publ'ns Inc.*, 198 F.3d 1143, 1147 (9th Cir. 1999)). "Generic terms cannot be valid marks subject

20  to trademark protection." *Id.* Courts allow defendants to raise the question of whether marks are

21  generic as an affirmative defense. *Filipino Yellow Pages*, 198 F.3d at 1146. To sufficiently allege

22  that a mark is generic, courts generally require a party to allege that consumers or the general

23  public believe the marks are generic for the kinds of product or service covered by the mark. *See,*

24  *e.g.*, *First Serv. Networks*, 2012 WL 5878837, at *2 ("If the general public and specific consumers

25

26  ───────────────
    [9] The '750 Mark and '751 Mark are incontestable marks and therefore presumptively distinctive.
27  *See* Mot. at 15-16; 15 U.S.C. § 1065. NPS only challenges the '750 Mark and '751 Mark on the
    grounds that they are generic. Countercl. ¶¶ 61-62.

28
───────────────
Case No.: 13-CV-01190-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND MOTION TO STRIKE

United States District Court
Northern District of California

1   believe the marks are generic names for the kinds of services that both FSN and FSMG provide, as

2   FSMG has alleged, then FSMG will succeed in its claims."); *Green Prods. Co. v. Black Flag*

3   *Brands LLC*, Case No. C-10-2121 (JCS), 2010 WL 3910336, at *4 (N.D. Cal. Oct. 4, 2010) (party

4   adequately alleged trademark was generic where party claimed that "(1) wood preservative that is

5   green in color is the standard in the construction industry; (2) competing wood preservatives

6   products in the 'copper green' color have been sold in the market for more than 20 years; and (3)

7   Plaintiff's mark 'COPPER-GREEN' has become generic for the goods for which it is registered,

8   i.e., wood preservative products."); *Aureflam*, 375 F. Supp. 2d at 953 (defendant sufficiently

9   alleged counterclaim that mark was generic where defendant "set forth facts alleging that 'Hoa' is

10   a common Vietnamese name" and that "'Pho Hoa' is a generic term for restaurants that serve beef

11   noodle soup").

12   In its counterclaims, NPS alleges that the "Purported Marks are a genre and/or style of

13   work boot/shoe" because they "depict[] . . . common characteristics of the entire genre of footwear

14   that is work centric." Countercl. ¶ 57. NPS further alleges that "[f]rom at least the early 1990's

15   until today, the Purported Marks feature styles that are ubiquitous," and that "there have been

16   thousands of uses of similarly styled footwear using the Purported Marks for decades." *Id.* ¶ 58.

17   As a result, NPS alleges that "consumers simply do not associate the Purported Marks solely with

18   Plaintiff." *Id.*; *see also id.* ¶ 57 ("[T]he trade dress depicted in the Purported Marks are not

19   understood by the public as identifying Plaintiff as the source or origin of the products."). In its

20   affirmative defenses, AirWair makes similar allegations about how the Marks are generic. *See* Aff.

21   Def. ¶ 10 (alleging that "the Purported Marks are a genre and/or style of shoe or boot" that is "not

22   solely associated with Plaintiff").

23   Accepting NPS's allegations as true and construing them in the light most favorable to

24   NPS, *Manzarek*, 519 F.3d at 1031, NPS alleges that AirWair's Marks have become generic for the

25   genre of work-centric footwear, and that the public does not identify AirWair as the producer of

26   footwear using the Marks. *See* Countercl. ¶¶ 57-58. Courts have held that similar allegations

United States District Court
Northern District of California

20

sufficiently plead the defense of genericness. *See Gibson*, 2014 WL 5419512, at *6-7 (party sufficiently alleged that marks had become generic where party alleged other companies "have used Plaintiff's marks and during what time periods the alleged infringement occurred," as well as that "the public does not use the mark to identify Plaintiff as the producer of the marked guitars"); *Black Flag*, 2010 WL 3910336, at *4 (party adequately alleged trademark was generic where party claimed that trademark was standard in the industry, that competing products using the trademark had been sold in the market for more than 20 years, and that plaintiff's trademark had therefore "become generic for the goods for which it is registered"). Thus the Court finds that here NPS has sufficiently alleged that the Marks have become generic.

The Court now turns to the question of whether NPS has adequately alleged that the '349 and '976 Marks lack distinctiveness. A distinctive trademark can be subject to trademark protection "provided that it has acquired 'secondary meaning' in the minds of consumers, i.e., it has 'become distinctive of the [trademark] applicant's goods in commerce.'" *Filipino Yellow Pages*, 198 F.3d at 1147 (quoting *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 10 (9th Cir. 1976)); *see also CG Roxane LLC v. Fuji Water Co.*, 569 F. Supp. 2d 1019, 1030 (N.D. Cal. 2008) (trademark acquires secondary meaning "if consumers predominately associate the mark with a specific producer"). At the pleading stage, courts have held that a party sufficiently alleges that a mark lacks distinctiveness if the party alleges that the mark lacks secondary meaning. *See, e.g.*, *Desert European Motorcars Ltd. v. Desert European Motorcars, Inc.*, No. EDCV 11-197 RSWL, 2011 WL 3809933, at *9 (C.D. Cal. Aug. 25, 2011) (denying motion to strike affirmative defense that mark lacked distinctiveness where the defendant alleged "Plaintiff's trademark claims based on Plaintiff's purported [mark] is barred because the mark is not distinctive and has not acquired secondary meaning.").

Here, NPS alleges that "[t]he trade dress depicted in the '349 Purported Mark and the '976 Purported Mark are not understood by the public as identifying Plaintiff as the source or origin of the products." Countercl. ¶ 62. NPS further alleges that this is the case because "similar fashion

Case No.: 13-CV-01190-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND MOTION TO STRIKE

United States District Court
Northern District of California

boots and shoes have flooded the market" such that consumers "simply do not associate the Purported Marks," including the '349 and '976 Marks, "solely with the Plaintiff." *Id.* ¶ 58. Accepting NPS's allegations as true and construing them in the light most favorable to NPS, *Manzarek*, 519 F.3d at 1031, NPS alleges that the '349 and '976 Marks do not have secondary meaning, i.e. that consumers do not "predominately associate the mark with a specific producer." *Fuji Water*, 569 F. Supp. 2d at 1030. At this stage of the proceedings, this is sufficient to allege that the '349 and '976 Marks lack distinctiveness. *See Desert European Motorcars*, 2011 WL 3809933, at *9 (defendant adequately pled defense that mark lacked distinctiveness where the defendant alleged that the mark do not have secondary meaning).

For the reasons stated above, the Court DENIES AirWair's motion to dismiss NPS's counterclaim for declaratory judgment of invalidity. For the same reasons, the Court DENIES AirWair's motion to strike NPS's affirmative defense of invalidity.

## IV. CONCLUSION

For the reasons stated above, the Court rules on AirWair's motion as follows:

- AirWair's motion to dismiss NPS's counterclaims of cancellation and unfair competition is GRANTED with leave to amend;

- AirWair's motion to dismiss NPS's non-infringement counterclaim to the extent it is based on fraud in the procurement, laches, and acquiescence is GRANTED with leave to amend;

- AirWair's motion to strike NPS's affirmative defenses of unclean hands, laches, acquiescence, and estoppel is GRANTED with leave to amend.

- AirWair's motion to dismiss and to strike is otherwise DENIED.

Should NPS elect to file amended counterclaims or affirmative defenses to cure the deficiencies identified herein, NPS shall do so within thirty (30) days of the date of this Order. Failure to meet the thirty-day deadline to file amended counterclaims or affirmative defenses, or failure to cure the deficiencies identified in this Order, will result in a dismissal with prejudice of the deficient

Case No.: 13-CV-01190-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND MOTION TO STRIKE

United States District Court
Northern District of California

1  counterclaims or affirmative defenses. NPS may not add new counterclaims or affirmative defenses

2  without leave of the Court or stipulation of the parties pursuant to Federal Rule of Civil Procedure 15.

3  **IT IS SO ORDERED.**

4  Dated: March 23, 2015

5  _____

6  LUCY H. KOH
   United States District Judge

United States District Court
Northern District of California